## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JONATHAN MARK MILLER,

      Petitioner,

v.                              Case No. 8:12-CV-537-T-36AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

### ORDER

      Petitioner, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated

this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He

challenges his conviction for written threat to kill or do bodily injury, entered in 2007 in the

Thirteenth Judicial Circuit, Hillsborough County, Florida.  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

      Petitioner entered a negotiated plea of guilty to one count of written threat to kill or do bodily

injury.  (Dkt. 15, Ex. 1, Vol. I, at pp. 40-43.)  He was sentenced to fourteen years' imprisonment.

(*Id.*, at p. 49.)  Petitioner appealed his conviction and sentence. The state appellate court *per curiam*

affirmed his judgment and sentence.  (Dkt. 15, Ex. 6.)  Petitioner filed a motion for postconviction

relief under Florida Rule of Criminal Procedure 3.850, followed by an amended motion.  (Dkt. 15,

Exs. 20, 22 at pp. 119-29.)  The state court granted an evidentiary hearing on some of his claims, and summarily denied his other claims.  (Dkt. 15, Ex. 21.)  Following the evidentiary hearing, the state court entered its final order denying Petitioner's postconviction motion.  (Dkt. 15, Ex. 24.)  The state appellate court *per curiam* affirmed the order of denial.  (Dkt. 15, Ex. 29.)  In the response (Dkt. 13), Respondent agrees that Petitioner's federal habeas petition is timely filed.  Petitioner filed a reply (Dkt. 17) to the response.

## STANDARD OF REVIEW

### Standard of Review for Petitions Subject to AEDPA

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), effective April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact.  It provides that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Additionally, "the focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  *See Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state court decision."  *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*, 130 S.Ct. 1855, 1866 (2010).

A state court's factual findings must also be given deference, and a petitioner bears the burden of overcoming a state court's factual determination by clear and convincing evidence.  Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports

relief. *Kelley v. Sec'y, Dep't of Corr*., 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs

in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

**Standard of Review for Claims of Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the petitioner. *Id*. at 687. In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. When a petitioner enters a plea, the prejudice inquiry focuses on whether, absent the alleged ineffective assistance, the petitioner would have insisted on proceeding to trial rather than entering his plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Counsel is presumed to have provided effective assistance. *See Strickland*, 466 U.S. at 689-90. Further, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Sustaining a claim of ineffective assistance of counsel is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two

apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted). If a court can dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

## DISCUSSION

**Ground One: "Prosecutorial Misconduct and ineffective assistance of trial counsel" and Ground Two: "Trial Counsel Coerced the petitioner into pleading guilty/Ineffective assistance of trial Counsel."**

Petitioner claims that the prosecutor committed misconduct by threatening and coercing him to accept the plea. He also alleges that counsel was ineffective for coercing him into accepting the plea, and that his plea is involuntary. He further appears to argue that counsel was ineffective for not objecting to the State's threats and for failing to ask for a better plea offer.

First, Petitioner is not entitled to relief on his claim of prosecutorial misconduct. He argues that the prosecutor threatened to file new charges and seek a sentence as a habitual felony offender if he did not accept a plea offer for fourteen years. Petitioner did not raise the federal nature of the claim when he brought it in state court on direct appeal[1] or in his postconviction motion. (Dkt. 15, Ex. 3; Dkt. 15, Ex. 20, at p. 20.) His failure to raise a constitutional argument in state court means that the claim is unexhausted.[2] *See Picard*, 404 U.S. at 275-76. State procedural rules do not contain a provision for successive direct appeals. *See* Fla. R. App. P. 9.140. Additionally, Petitioner

---

[1] Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), after which Petitioner filed a *pro se* appellate brief. (Dkt. 15, Exs. 2, 3.)

[2] For the first time, Petitioner raises federal law in support of his claim in his reply to Respondent's response. (Dkt. 17, at pp. 11-15.) However, the claim remains unexhausted because he did not raise the constitutional dimension of the claim to the state court.

cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim.

P. 3.850(b), (h).  Accordingly, this ground is procedurally defaulted, and Petitioner does not

demonstrate that an exception to the procedural default rule would apply. *See Smith*, 256 F.3d at

1138.

Second, Petitioner is not entitled to relief on his claims of ineffective assistance of counsel.

The state court conducted an evidentiary hearing on this argument.  At the hearing, counsel testified

that, on October 17, 2007, the day a violation of probation hearing was set on two of Petitioner's

other cases, the State conveyed an offer of fourteen years on the pending charge of written threat to

kill or do bodily injury, with time served on the violations of probation. (Dkt. 15, Ex. 23, at pp. 185-

87.)  The State informed counsel that if Petitioner rejected the offer, it was prepared to file a

superseding information alleging two additional charges of written threat to kill or do bodily injury

and to seek a habitual felony offender sentence.  (*Id.*, at pp. 186-88.)[3]  Counsel did not believe he

had any basis to prevent the State from filing a superseding information.  (*Id.*, at p. 189.)

Additionally, counsel testified that he previously requested a bottom of the guidelines

sentence[4] from the prosecutor and court but was unsuccessful, and that he was ultimately unable to

negotiate with the State for a sentence lower than fourteen years.  (*Id.*, at pp. 192-93.) Counsel

testified that he communicated this to Petitioner prior to the entry of his plea.  (*Id.*, at p. 193.)

Counsel testified further regarding the potential sentence Petitioner would face if the State

---

[3]The transcript of proceedings on October 17, 2007, confirms that the State indicated it would file a superseding information with two additional charges of written threat to kill or do bodily injury if Petitioner did not accept a plea and resolve the case that day.  (Dkt. 15, Ex. 1, Vol. I, at pp. 63-64.)

[4]Petitioner refers to his criminal punishment code scoresheet prepared pursuant to Florida Rule of Criminal Procedure 3.992(a). The scoresheet provides a "lowest permissible sentence," also referred to as a bottom of the guidelines sentence.  The scoresheet in Petitioner's case, which also involved admissions to violating probation on his other cases, provides for a bottom of the guidelines sentence of 57.6 months.  (Dkt. 15, Ex. 1, Vol. 1, at pp. 30-31.)

filed additional charges.  Notwithstanding a potential habitual felony offender sentence, counsel believed that Petitioner would face a total sentence of forty-five years on the pending charge of written threat to kill or do bodily injury and the two potential new charges if the sentences were imposed consecutively.[5]  He testified that he and Petitioner took into consideration the possibility of such a sentence when discussing the plea. (*Id.*, at pp. 195-96; Dkt. 15, Ex. 24, at p. 139.)  Counsel testified that they also considered the likelihood of success on the pending charge and the two potential new charges, which counsel did not believe to be high.  (Dkt. 15, Ex. 23, at pp. 189-91.)  Counsel testified that he reviewed Petitioner's scoresheet and plea form with him.  (*Id.*, at pp. 189-90, 196.)  Counsel further stated that he recalled going over the case with Petitioner and "[m]aking sure he had no questions whatsoever," and that he believed Petitioner understood everything contained in the plea form.  (*Id.*)  He testified that he did not coerce or threaten Petitioner to take the plea.  (*Id.*, at p. 196.)  Counsel also testified that he spent extra time with Petitioner ensuring that his plea was voluntary and that, ultimately, he "completely left it up to [Petitioner]."  (*Id.*, at p. 197.)

Petitioner testified at the evidentiary hearing that he told counsel he wanted a sentence at the bottom of the guidelines.  (*Id.*, at p. 168.)  Petitioner testified that on the date of the plea, counsel informed him that the State intended to add two additional charges and would seek to have him sentenced to life as a habitual felony offender unless he agreed to the offer of fourteen years.  (*Id.*, at p. 169.)  Petitioner testified that counsel pressured him by saying he needed to take the plea.  (*Id.*, at pp. 169-70.)  Petitioner was reluctant to do so but was desperate and "ended up going along with it, even though I didn't want to."  (*Id.*, at p. 170.)

At the change of plea hearing, when asked if he had been threatened to get him to plead

---

[5]A charge of written threat to kill or do bodily injury is a second degree felony, which is punishable by up to fifteen years' imprisonment.  *See* §§ 836.10, 775.082(3)(d), Fla. Stat.

guilty, Petitioner answered that he was told he would be "habitualized" if he did not take the plea, but that he did not consider that information to be a threat, and that he was not coerced into doing something he did not want to do. (Dkt. 15, Ex. 1, Vol. I, at pp. 67-68.)   At the postconviction evidentiary hearing, Petitioner testified that he provided that answer because, at the time, he thought his plea was voluntary and did not realize what a coerced plea was.  (Dkt. 15, Ex. 23, at pp. 171-73.) Petitioner testified that when he "looked into the matter" he realized he was "pretty much" coerced, but that he did not know this at the time.  (*Id.*, at p. 172.)  Petitioner further testified that he was scared and took the deal out of fear but that he started "having second thoughts" after considering the situation and realizing his mistakes.  (*Id.*, at pp. 173-74.)  Petitioner testified that he believed the State's intention to file new charges and seek a habitual felony offender sentence was a threat.  (*Id.*, at p. 170.)

The state court denied Petitioner's claims, finding as follows:

> After reviewing claim two, the testimony, evidence, and argument presented at the evidentiary hearing, the court file, and the record, the court finds [counsel]'s testimony to be credible than Defendant's testimony.  Therefore, according to [counsel]'s testimony, the Court finds [counsel] did not coerce Defendant into accepting the State's plea offer.  According to [counsel]'s testimony, the Court finds [counsel] and Defendant discussed the plea offer, the likelihood of success on the violation of probation hearing, the new charge, and the possible charges in the superseding Information.  Further, the Court finds [counsel] discussed the sentencing possibilities, the scoresheet, and the plea form with Defendant, and Defendant considered all these issues before knowingly and voluntarily deciding to accept the State's plea agreement.   Therefore, the Court finds [counsel] did not coerce Defendant into accepting the plea, as [counsel] testified.  Further, the Court finds counsel did not have a legal ground on which to object once the State voiced its intention to file a superseding Information. The Court also finds counsel did discuss with the State and the Court a possible resolution of the case with a lower sentence, but the State and the Court were both unwilling to offer Defendant a bottom of the guidelines sentence.  Therefore, the Court finds Defendant has not demonstrated deficient performance by counsel.  *See Strickland*, 466 U.S. at 686-87.
> The Court also notes, to the extent Defendant alleges his plea was involuntary due to counsel's coercion, Defendant is required to demonstrate that "withdrawal of

his plea is necessary to correct a manifest injustice." *See Bradford v. State*, 869 So.2d 28 (Fla. 2d DCA 2004).  Because the Court finds counsel did not coerce Defendant into accepting the State's plea offer, the Court also finds Defendant has not demonstrated a manifest injustice that necessitates withdrawal of his plea.  *Id.* Therefore, the Court finds Defendant is not entitled to relief on claim two.

(Dkt. 15, Ex. 24, at pp. 141-42) (court's record citations omitted).

In considering Petitioner's claims, the state court found counsel's testimony to be more credible than Petitioner's testimony.  The state court's findings of credibility are presumed to be correct and are entitled to deference in federal habeas proceedings. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" that of the petitioner.); *Devier v. Zant,* 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are ... entitled to the same presumption according findings of fact under 28 U.S.C. § 2254(d).").

The record supports the state court's findings.  The state court found that counsel did not coerce Petitioner into accepting the plea, that counsel had no basis to object when the State intended to file a superseding information, and that counsel did seek a lower sentence but was unsuccessful. The testimony that the court found credible reflects that counsel sought a sentence at the bottom of the guidelines and further attempted to negotiate with the State for a sentence of less than fourteen years.  Moreover, if Petitioner rejected the offer for fourteen years, he faced a significantly longer overall term due to the imminent filing of additional charges.  Counsel's testimony reflects that he and Petitioner reviewed this information when discussing Petitioner's options, but counsel did not threaten or coerce Petitioner into accepting the offer.  Counsel also testified he did not believe he would be able to prevent the State from filing a superseding information.  At the change of plea

hearing, Petitioner told the court that he did not believe he was being threatened or coerced into entering the plea. (Dkt. 15, Ex. 1, Vol. I, at pp. 67-68.) The state court implicitly determined that his postconviction hearing testimony, which indicated that his opinion had since changed, was insufficient to provide relief. The record supports the state court's findings that counsel was not ineffective for the reasons submitted by Petitioner and did not coerce Petitioner into entering his plea. Petitioner does not show entitlement to relief.

It follows that Petitioner cannot show that his plea was involuntary due to any deficient performance or coercion on the part of counsel. Moreover, the record reflects that Petitioner entered his plea voluntarily, without coercion. A guilty plea is the waiver of a right to trial, and "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Accordingly, the standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

"A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)). Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [and] his lawyer [at a plea hearing] ... as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court

carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The change of plea hearing transcript reflects that Petitioner told the court he understood the charge against him and the maximum possible sentence; that he understood and signed the plea form and had no questions about it; that he did not consider the future possibility of a habitual felony offender sentence to be a coercive threat; that no other threats or promises had been made to induce the plea; and that he understood he was giving up his right to a jury trial. (Dkt. 15, Ex. 1, Vol. I, at pp. 66-68.)[6]  Petitioner does not allege that he did not understand the proceedings or the consequences of entering his plea.

Accordingly, the record supports the state court's determination that Petitioner failed to show that his plea was rendered involuntary due to counsel's performance.  Petitioner fails to show that the state court's ruling was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Consequently, he is not entitled to relief on Ground One or Ground Two.

**Ground Three: "Ineffective Assistance of trial Counsel."**

Petitioner argues that counsel was ineffective because he failed to show Petitioner his scoresheet and failed to seek a 57.6-month sentence in accordance with the bottom of the guidelines. The state court conducted an evidentiary hearing on this ground, which Petitioner raised in claim five of his postconviction motion.

---

[6]This portion of the record further indicates that, even assuming Petitioner exhausted his claim of prosecutorial misconduct by threatening him into taking the plea, it would provide no relief because Petitioner  told the court that he was not threatened into taking the plea through the potential of a habitual felony offender sentence, or for any other reason.

At the evidentiary hearing, counsel testified that he recalled reviewing the criminal punishment code scoresheet with Petitioner prior to him entering his plea. (Dkt. 15, Ex. 23, at p. 191.)  As addressed in the discussion of Grounds One and Two, *supra*, counsel testified that he sought a bottom of the guidelines sentence, but that his attempt was unsuccessful.  He stated that the fourteen-year offer was the best he was able to negotiate with the State.  Counsel further testified that, based on his experience with the sentencing court, he did not believe Petitioner would have been successful had Petitioner addressed the court to ask for a sentence at the bottom of the guidelines.  (*Id.*, at p. 192.)

Petitioner testified that he repeatedly asked counsel how much time he scored based on the guidelines, but that counsel responded that he did not have the scoresheet.  (*Id.*, at pp. 174-75.)  He also told the court that he asked counsel to seek a bottom of the guidelines sentence.  (*Id.*, at p. 174.)  Petitioner further testified if he had seen the scoresheet, he would not have pleaded guilty to a term of fourteen years, and would have attempted to ask the court directly for a bottom of the guidelines sentence.  (*Id.*, at pp. 175-76.)

Following the hearing, the state court denied the claim, reasoning as follows:

> After reviewing claim five, the testimony, evidence and argument presented at the evidentiary hearing, the court file and the record, the Court finds [counsel]'s testimony to be more credible than Defendant's testimony.  Therefore, according to [counsel]'s testimony the Court finds [counsel] reviewed the scoresheet with Defendant before he entered his guilty plea.  The Court also finds [counsel] tried multiple times to negotiate a plea agreement with the State for a bottom of the guidelines sentence, but the State would not agree.  Further, as the Court found above, counsel did inquire to determine whether the Court was willing to offer Defendant a bottom of the guidelines sentence, and counsel discovered the Court was not willing to do so.  Therefore, the Court finds Defendant has failed to demonstrate deficient performance, and has not met the requirements of *Strickland*.  *See Strickland*, 466 U.S. at 686-87. Therefore, the Court finds Defendant is not entitled to relief on claim five.

(Dkt. 15, Ex. 24, at pp. 147-48) (court's record citations omitted).

This finding is entitled to deference, and is supported by the record. The state court found counsel's testimony to be credible. In accordance with counsel's testimony, the court further found that counsel sought a bottom of the guidelines sentence and also reviewed the scoresheet with Petitioner prior to entry of the plea. This credibility determination is presumed to be correct and is entitled to deference in federal habeas proceedings. *See Baldwin*, 152 F.3d at 1316; *Devier*, 3 F.3d at 1456. The record supports the state court's findings that counsel's performance was not deficient.

Petitioner contends that counsel was untruthful at the evidentiary hearing when he testified that he sought a bottom of the guidelines sentence and addressed with Petitioner the possibility of consecutive sentences if new charges were filed. In support, he appears to argue that counsel agreed at the evidentiary hearing that he did not include this information in a memorandum concerning the case that counsel created for his file. However, this does not demonstrate that counsel lied at the hearing, and Petitioner offers no evidence in support of his allegations. Without any supporting evidence, Petitioner's argument is merely an attempt to re-litigate issues considered and resolved by the state court. As addressed, however, the state court's findings are supported by the record and are afforded deference. Additionally, speculative or unsupported assertions provide no basis for federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Accordingly, Petitioner fails to show that the state court's determination that counsel did not provide ineffective assistance was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Ground Three warrants no

relief.

**Ground Five:[7] "Ineffective Assistance of trial counsel/Misconduct of trial counsel."**

Petitioner argues that counsel was ineffective for misadvising him about the consequences of entering his plea. Specifically, Petitioner asserts that counsel erroneously informed him he would become eligible for parole after serving a portion of his sentence, and that this eligibility would only exist if he entered a plea. Petitioner states that he learned he was ineligible for parole after he began serving his sentence. He raised this claim in ground seven of his postconviction motion. The state court conducted an evidentiary hearing on this claim.

Counsel testified that he did not tell Petitioner he would be eligible for parole if he entered the plea, and did not make Petitioner a promise concerning the actual amount of time he would spend in prison. (Dkt. 15, Ex. 23, at p. 196.) In contrast, Petitioner testified that counsel informed him he would be paroled but that when Petitioner indicated parole had been abolished, counsel nevertheless stated that "people get paroled all the time." (*Id.*, at pp. 177-78.) Petitioner believed this was a form of coercion. (*Id.*, at p. 178.)

The state court denied this claim:

> After reviewing claim seven, the testimony, evidence, and argument presented at the evidentiary hearing, the Court file and the record, the Court finds [counsel's] testimony to be more credible than Defendant's testimony. Therefore, according to [counsel's] testimony, the Court finds [counsel] did not promise Defendant he would be eligible for parole. The Court further finds, as [counsel] testified, that he did not provide any promise or guarantee to Defendant regarding the actual amount of time he would spend in the prison. The Court finds Defendant has not demonstrated counsel performed deficiently because the Court finds counsel did not promise Defendant he would be eligible for parole or actually serve a lesser sentence. Therefore, Defendant has failed to meet the requirements of Strickland. See Strickland, 466 U.S. at 686-87. Therefore, the Court finds Defendant is not

---

[7]Some of Petitioner's claims are considered out of numerical order for clarity.

entitled to relief on claim seven.

(Dkt. 15, Ex. 24, at pp. 149-50) (court's record citations omitted).  The record supports the state court's determination.  It found counsel's testimony to be more credible than Petitioner's testimony.  Again, a state court's credibility determinations are presumed to be correct and are entitled to deference in federal habeas proceedings.  *See Baldwin*, 152 F.3d at1316; *Devier,* 3 F.3d at 1456.  Therefore, deference must be afforded to the state court's findings in this case that counsel was more credible than Petitioner, and that counsel did not promise Petitioner he would be eligible for parole or would actually serve any particular amount of time in prison.  The record supports the state court's conclusion, and Petitioner fails to show he is entitled to relief.

To the extent Petitioner argues that counsel lied at the evidentiary hearing, again, he presents only conclusory statements that counsel was untruthful.  By failing to present any evidence to substantiate his assertion that counsel's testimony was not credible, Petitioner attempts to reargue the issues considered and rejected by the state court, the findings of which are entitled to deference and are supported by the record.  His unsubstantiated assertions cannot provide federal habeas relief. *See Tejada*, 941 F.2d at 1559.  Petitioner provides no basis for the Court to conclude that the state court's determination was contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts.  Consequently, Ground Five does not warrant relief.

**Ground Eight: "Ineffective Assistance of trial Counsel."**

Petitioner argues that counsel was ineffective when he incorrectly advised Petitioner that if he did not accept the plea offer, he would be sentenced in this case as a habitual felony offender, or

HFO.  Petitioner contends that counsel misadvised him because he did not actually qualify as a habitual felony offender.  He asserts that if counsel had not provided this erroneous advice, he would not have accepted the plea offer.  The state court conducted an evidentiary hearing on this ground, which Petitioner raised in claim eleven of his postconviction motion.

Counsel acknowledged at the evidentiary hearing that both he and the prosecutor erroneously believed that Petitioner qualified for sentencing as a habitual felony offender.  (Dkt. 15, Ex. 23, at pp. 188-89.)  Counsel testified, however, that he and Petitioner discussed the State's intention to file a superseding information with two new charges, which could result in a forty-five year sentence regardless of whether Petitioner qualified as a habitual felony offender.  (*Id.*, at pp. 189-90,198.)

Petitioner testified that counsel told him if he did not accept the State's offer, the State would sentence him to life as a habitual felony offender and further informed him that he qualified as such.  (*Id.*, at pp. 178, 179.)  Petitioner also testified that counsel did not discuss with him the possibility of receiving consecutive sentences and that Petitioner believed any sentences on the potential additional charges would run concurrently.  (*Id.*, at pp. 180-81.)  Petitioner further testified that he had little interest in going to trial and instead wanted a sentence close to the bottom of the guidelines.  (*Id.*, at p. 169.)  When Petitioner was later asked whether, upon realizing he did not qualify as a habitual felony offender, he believed he "might as well" have proceeded to trial, he responded, "I would say." (*Id.*, at pp. 181-82.)

The state court denied Petitioner's claim after the evidentiary hearing:

> After reviewing claim eleven, the testimony, evidence, and argument presented at the evidentiary hearing, the Court file and the record, the Court finds Defendant has failed to demonstrate prejudice. [Counsel] conceded at the evidentiary hearing that both he and the State mistakenly believed Defendant could be sentenced as an HFO, and therefore, counsel mistakenly told Defendant he qualified as an HFO.  Although counsel concedes this oversight, Defendant must also demonstrate

prejudice to show he is entitled to relief. This requires that Defendant show there is a reasonable probability he "would not have pleaded guilty and would have insisted on going to trial" if counsel had told him he did not qualify as an HFO.

The Court finds Defendant has not met his burden to demonstrate that he would have insisted on going to trial rather than plead guilty. First, the Court notes Defendant testified he "really wasn't interested in trial." Later in his testimony, when asked if he felt he "might as well have went to trial" instead of accepting a plea agreement for one year below the current statutory maximum, Defendant answered – with a flippant demeanor – "I would say." However, the Court finds Defendant's testimony that he would have insisted on going to trial is not credible. The Court finds [counsel]'s testimony credible and finds, according to his testimony, that a significant portion of his discussion with Defendant leading to Defendant's decision to plead guilty, involved the State's intention to file a superseding Information.

Specifically, the Court finds the superseding indictment, which would have been three second-degree felonies, exposed Defendant to a total exposure of 45 years if sentenced consecutively. Indeed, the Court finds there was nothing precluding the sentencing court from imposing these sentences consecutively if Defendant had been convicted of all three second-degree felonies – in spite of Defendant's testimony he was confident his sentences would be concurrent. Further, counsel testified the State had the prepared superseding Information and Defendant's letters that were the basis of these charges in court and ready to file unless Defendant accepted the plea offer. In light of these impending charges and the forty-five year exposure Defendant faced with the two additional charges, the Court finds there is not a reasonable likelihood Defendant would have insisted on going to trial and risking a forty-five year sentence rather than accept the fourteen-year plea offer to resolve this case and his two violation of probation cases. Consequently, the Court finds Defendant has failed to demonstrate prejudice as required by *Strickland. See Strickland*, 466 U.S. at 686-87. Therefore, the Court finds Defendant is not entitled to relief on claim eleven.

(Dkt. 11, Ex. 24, at pp. 155-56) (court's record citations omitted). The record supports the state court's conclusion. Even assuming that counsel was ineffective because he provided advice based upon a mistaken belief concerning Petitioner's habitual felony offender eligibility, Petitioner fails to show prejudice. The state court recognized that, to show prejudice on an ineffective assistance claim in a case involving a guilty plea, the party must demonstrate a reasonable probability that he would have insisted on proceeding to trial, rather than accepting the plea, absent counsel's misadvice. *See Hill*, 474 U.S. at 58-59.

As the state court's order noted, Petitioner testified at the evidentiary hearing that he had

little interest in proceeding to trial. Additionally, deference must be afforded to the finding of the state court, which was in a position to evaluate the responses and demeanor of the witnesses, that Petitioner's testimony to the contrary indicating he would have gone to trial was not credible. *See Baldwin,* 152 F.3d at 1316; *Devier,* 3 F.3d at 1456.

Similarly, the state court's finding that counsel's testimony was credible is also entitled to deference. The record establishes that, if Petitioner did not enter a plea, the State intended to file an amended information charging him with two additional counts of written threat to kill or do bodily injury. Convictions on all three counts could have resulted in an overall forty-five year sentence on those charges. A charge of written threat to kill or do bodily injury is a second degree felony, which is punishable by up to fifteen years' imprisonment. *See* §§ 836.10, 775.082(3)(d), Fla. Stat. A sentencing court has discretion to impose consecutive sentences for offenses charged in the same charging document. § 921.16(1), Fla. Stat. Therefore, the testimony the state court found to be credible reflects that Petitioner could have faced a significantly longer sentence, even absent the habitual felony offender designation, and that Petitioner considered this information before deciding to enter his plea.

The record supports the state court's conclusion that Petitioner failed to satisfy the prejudice component of his ineffective assistance claim. Petitioner does not show that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts. Consequently, Petitioner is not entitled to relief on Ground Eight.

**Ground Four: "Vindictive Sentencing issue/and ineffective Assistance of trial Counsel regarding the vindictive sentencing matter."**

Petitioner asserts that his sentence was vindictive because the sentencing court made

statements indicating that fourteen years was a very long time to serve in prison and that this was a sad case.  Petitioner additionally argues that trial counsel was ineffective for failing to object or to request that the judge recuse himself.  He further appears to argue that appellate counsel was ineffective for failing to raise a claim of vindictive sentence on direct appeal.

First, Petitioner's claim that the court imposed a vindictive sentence provides no relief. Petitioner raised this argument in ground six of his postconviction motion, but argued only state law in support of his allegation.  (Dkt. 15, Ex. 20, at p. 22.)  His failure to raise a federal claim when he brought this argument in state court means that the exhaustion requirement is not satisfied.[8]  *See Picard*, 404 U.S. at 275-76.  As Petitioner cannot return to state court to file an untimely, successive postconviction motion, this claim is also procedurally defaulted.  *See Smith,* 256 F.3d at 1138. Petitioner does not demonstrate that either exception to the procedural default rule applies to allow review of this claim.[9]  *Id.*

Second, Petitioner is not entitled to relief on his claims that trial counsel was ineffective for failing to object to a vindictive sentence, or that appellate counsel was ineffective for failing to raise the issue of vindictive sentencing on appeal.  Petitioner's claim of ineffective assistance of trial

---

[8]The Court recognizes that, for the first time, Petitioner raises federal law in support of his claim in his reply to Respondent's response.  (Dkt. 17, at pp. 30-34.)  However, the claim remains unexhausted because he did not raise the constitutional dimension of the claim to the state court.

[9]Furthermore, even if the claim presented an exhausted argument, Petitioner does not show how vindictive sentencing law applies to his case. A vindictive sentence is one that has been increased because the defendant exercised a constitutional right. *See North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). *Pearce* set forth a presumption of judicial vindictiveness that arises "whenever a judge imposes a more severe sentence upon a defendant after a new trial" unless the reasons for the increased sentence are apparent on the record *Id*. at 726; *Texas v. McCullough*, 475 U.S. 134, 142 (1986).  This presumption, however, has been limited to apply only in circumstances in which there is a "reasonable likelihood" of vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799 (1989).  Therefore, it is a petitioner's burden to show a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Id*. Petitioner does not allege that his sentence was imposed in retaliation for exercising a constitutional right.  He was not resentenced in this case, and an increased sentence therefore was not imposed. Furthermore, Petitioner's sentence was reached through a negotiated plea agreement between the State and defense.  Petitioner received the sentence for which he bargained.

counsel is unexhausted because Petitioner did not raise it in his state postconviction motion.  (Dkt. 15, Exs. 20, 22 at pp. 119-29.)  He cannot return to state court to file a successive, untimely motion for postconviction relief.  *See* Fla. R. Crim. P. 3.850(b), (h).  Similarly, his claim of ineffective assistance of appellate counsel is unexhausted because Petitioner failed to present it to the state court in a pleading alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141(d).  Petitioner cannot return to state court to file an untimely petition.  *See* Fla. R. App. P. 9.141(d)(5). Therefore, Petitioner's failure to satisfy the exhaustion requirement renders these claims procedurally defaulted.  *See Smith,* 256 F.3d at 1138.  Petitioner does not argue or demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception would apply.  *Id.*  Accordingly, Petitioner fails to demonstrate entitlement to relief on any of the claims raised in Ground Four.

**Ground Six: "Newly Discovered Evidence."**

Petitioner asserts that he is entitled to relief on the basis of newly discovered evidence that the victim died after Petitioner began serving his prison sentence.  Petitioner contends that the length of his sentence was based on his posing a threat to the victim.  He argues that, because he cannot present a threat to a person who is deceased, he should receive a sentence at the bottom of the guidelines or be permitted to withdraw his plea and enter a plea of not guilty.[10]

This claim is unexhausted due to Petitioner's failure to raise any constitutional claim when he  brought this ground in his postconviction motion.  (Dkt. 15, Ex. 20 at p. 24, Ex. 22 at pp. 127-28.)  His failure to raise a constitutional challenge in state court means that the exhaustion requirement is not satisfied.  *See Picard*, 404 U.S. at 275-76.  Petitioner cannot return to state court

---

[10]Three victims were named in the charging document.  (Dkt. 15, Ex. 1, Vol. II, at p. 106.)  Petitioner asserts that victim Pamela Bocook is deceased.

to file an untimely, successive postconviction motion.   *See* Fla. R. Crim. P. 3.850(b), (h).
Accordingly, his claim is procedurally defaulted, and he does not demonstrate that either the cause
and prejudice or fundamental miscarriage of justice exception applies.[11]   *See Smith*, 256 F.3d at
1138.   Therefore, the claim raised in Ground Six cannot provide relief.

**Ground Seven: "Jurisdiction Issue."**

Petitioner appears to assert that the Office of the State Attorney in the Thirteenth Judicial
Circuit was without jurisdiction to charge him, and that the Circuit Court in the Thirteenth Judicial
Circuit did not have jurisdiction to accept his plea or impose his sentence.   He contends that because
he wrote the letters forming the basis of his charge while he was incarcerated at Hamilton
Correctional Institution in Jasper, Florida, officials in Hillsborough County were without authority
over his case.

Petitioner is not entitled to review of this claim because he fails to identify any constitutional
violation, and brings this argument only under state law.[12]   Federal habeas relief is available only
to correct errors of constitutional dimension.   *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);
*Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983).   Therefore, claims involving only state law are
not cognizable in a federal habeas petition.   *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.

---

[11]To the extent Petitioner's assertion that the evidence of the victim's death reveals a "manifest injustice" in
his case could be construed as an argument that the fundamental miscarriage of justice exception applies, it must fail.
In order to invoke this exception, Petitioner must show he is actually innocent and that a constitutional violation has
resulted in his conviction.   *See Schlup*, 513 U.S. at 327.   Petitioner contends that the letters he wrote did not contain
a threat to kill or do bodily injury.   However, he fails to demonstrate that he is actually innocent of the offense of
written threat to kill or do bodily injury.   *Id.* at 324 ("To be credible, such a claim requires petitioner to support his
allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence,
trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial.").   Petitioner makes no
such claim here.   Moreover, he admitted to the facts alleged when he pled guilty.   *See Hudson v. United States*, 272
U.S. 451, 455 (1926) (a plea of guilty "is an admission of guilt for the purposes of the case.").

[12]Petitioner concedes in his reply that he has found no federal law in support of his claim.   (Dkt. 17, at p.
44.)

1988); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). *See also Jones v. Sec'y, Dep't of Corr.*, 2014 WL 505093 at *6 (N.D. Fla. Feb. 7, 2014) ("A state court's jurisdiction to convict and sentence a defendant are quintessential state law matters this Court cannot review in a federal collateral proceeding.").   Ground Seven provides no relief for Petitioner.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is directed to enter judgment in favor of Respondent and close this case.

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made this showing.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 18, 2015.

Charlene Edwards Honeywell
United States District Judge

Copy furnished to:
*Pro se* Petitioner
Counsel of Record